1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CARLA WHITE,                                No.  2:13-cv-2434 AC

12              Plaintiff,

13        v.                                     ORDER

14   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,
15
                Defendant.
16

17

18        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner") denying her application for period of disability and disability insurance

20   benefits ("DIB") under Title II of the Social Security Act.  Plaintiff's motion for summary

21   judgment and the Commissioner's cross-motion for summary judgment are pending.  For the

22   reasons discussed below, the court will grant plaintiff's motion for summary judgment in part and

23   deny the Commissioner's cross-motion for summary judgment.

24                        PROCEDURAL BACKGROUND

25        Plaintiff filed her application for DIB on September 7, 2010, alleging disability beginning

26   on October 1, 2004.  Administrative Record ("AR") 135–43.  Plaintiff's application was denied

27   initially and again upon reconsideration.  AR 72–73, 84.  On June 7, 2012, a hearing was held

28   before administrative law judge ("ALJ") Carol L. Buck.  AR 13–21.  Plaintiff appeared with an

attorney at the hearing, where she and a vocational expert testified.  AR 13.  During the hearing plaintiff amended her application to reflect an alleged onset date of September 30, 2005.  AR 13, 49.  In a decision dated March 21, 2012, the ALJ found plaintiff not disabled.  AR 21.

The ALJ made the following findings (citations to 20 C.F.R. and Exhibits omitted):

> 1.   The claimant last met the insured status requirements of the Social Security Act on September 30, 2005.

> 2.   The claimant has not engaged in substantial gainful activity during the period from her amended onset date of September 30, 2005 through her date last insured of September 30, 2005.

> 3.   Through the date last insured, the claimant had the following severe impairments: residuals status post compression fracture and asthma.

> 4.   Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

> 5.   After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except the claimant is capable of pushing and/or pulling and lifting and/or carrying 50 pounds occasionally and 25 pounds frequently; she could stand and/or walk 6 hours in an 8-hour workday; she can sit 6 hours in an 8-hour workday; she can occasionally climb ramps/stairs/ladders/ropes/scaffolds, stoop, and crawl; she can frequently balance, kneel, and crouch; and she should avoid concentrated exposure to fumes, odors, dust, gases, and poor ventilation.

> 6.   Through the date last insured, the claimant was unable to perform any past relevant work.

> 7.   The claimant was born on February 22, 1968 and was 37 years old, which is defined as a younger individual age 18-49, on the date last insured.

> 8.   The claimant has at least a high school education and is able to communicate in English.

> 9.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

> 10.  Through the dated [sic] last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

11.   The claimant was not under a disability, as defined in the Social Security Act, at any time from September 30, 2005, the amended onset date, through September 30, 2005, the date last insured.

AR 13–21.

Plaintiff requested review of the ALJ's decision by the Appeals Council, but it denied review on October 15, 2013, leaving the ALJ's decision as the final decision of the Commissioner of Social Security.  AR 1–3, 8.

## FACTUAL BACKGROUND

Born on February 22, 1968, plaintiff was 37 years old on the alleged onset date of disability and 44 years old at the time of the administrative hearing.  AR 13, 21, 137.  Plaintiff has not engaged in substantial gainful activity her alleged onset date.  AR 15.

## LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive.  See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  "It means such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)).  "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice."  Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).  Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion."  Desrosiers v. Sec' y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).

1  "The ALJ is responsible for determining credibility, resolving conflicts in medical

2  testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001)

3  (citations omitted).  "Where the evidence is susceptible to more than one rational interpretation,

4  one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v.

5  Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  However, the court may review only the reasons

6  stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not

7  rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d

8  871, 874 (9th Cir. 2003).

9  The court will not reverse the Commissioner's decision if it is based on harmless error,

10  which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the

11  ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir.

12  2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v.

13  Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

14  ANALYSIS

15  Plaintiff seeks summary judgment on the grounds that (1) the ALJ's finding that plaintiff

16  did not suffer from Listing 13.07, multiple myeloma, by the date last insured is not supported by

17  substantial evidence; (2) the ALJ's finding that plaintiff's RFC includes an ability to perform

18  medium work is not supported by substantial evidence; (3) the ALJ's decision not to call a

19  medical advisor at plaintiff's hearing constituted legal error; and (4) the ALJ's finding that

20  plaintiff's testimony was not credible was in error.  The Commissioner, in turn, argues that the

21  ALJ's findings are supported by substantial evidence and are free from legal error.  For the

22  reasons discussed below the court finds that the ALJ committed legal error by failing to call a

23  medical expert to testify to the onset date of plaintiff's multiple myeloma.

24  A.   Medical Expert Testimony

25  Plaintiff argues that because the medical record is ambiguous as to the onset date of her

26  multiple myeloma, the ALJ erred by not calling a medical expert.  ECF No. 15 at 13–14.  The

27  Commissioner argues that the ALJ was not required to call a medical expert because there is no

28  question that the onset date of plaintiff's multiple myeloma was after her last date insured.  ECF

4

No. 20 at 7–8.  The court finds that Social Security Ruling ("SSR") 83–206 required the ALJ to call upon a medical expert because the record does not reflect a definite onset date.[1]

     1.   <u>Legal Standards</u>

SSR 83–206 provides guidance regarding the onset of disability.  For onset in disabilities of a non-traumatic origin, medical records containing descriptions of examinations or treatment of the individual serve as the primary element in onset determination.  SSR 83–20.  Regarding slowly progressing impairments, the regulations give the following instructions:

> With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.

Id.

The regulations further state that

> "[h]ow long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case.  This judgment, however, must have a legitimate medical basis.  At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred."  <u>Id.</u>

In <u>DeLorme v. Sullivan</u>, 924 F.2d 841, 848 (9th Cir. 1991), the Ninth Circuit found that "[i]n the event that the medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83–20 requires the administrative law judge to call upon the services of a medical advisor and to obtain all evidence which is available to make the determination."  Thus, failure to call on a medical expert to assist in determining the date of onset when onset is not otherwise established clearly in the record is legal error.  <u>Id.</u> at 589–90; <u>Quarles v. Barnhart</u>, 178 F. Supp. 2d 1089, 1096 (N.D.Cal.2001).  "[R]egardless of how careful and well

---

[1]  "SSRs do not carry the 'force of law,' but they are binding on ALJs nonetheless."  <u>Bray v. Comm'r of Soc. Sec. Admin.</u>, 554 F.3d 1219, 1224 (9th Cir. 2009).  The Ninth Circuit gives them deference so long as they do not produce "a result inconsistent with the statute and regulations."  <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 346 n.3 (9th Cir. 1991).

1  supported the ALJ's inference may be . . . [w]here the evidence is ambiguous and there are

2  indications that the claimant's . . . condition was disabling prior to the [last date insured], then a

3  medical expert must be called." <u>Quarles</u>, 178 F. Supp. 2d at 1096–97; <u>see also</u> <u>Morgan v.</u>

4  <u>Sullivan</u>, 945 F.2d 1079, 1082 (9th Cir. 1991) (reversing in part an ALJ's determination of the

5  onset date of mental disorders without the assistance of a medical expert).

6        2.   <u>Medical History</u>

7       The record suggests that plaintiff's multiple myeloma was diagnosed late, perhaps due to

8  medical error.  Under these circumstances, the date of diagnosis is not a reliable indicator of the

9  date the condition became severe enough to be disabling.  The relevant history follows.

10       Plaintiff reported to a doctor at Mercy San Juan Medical Center, Dr. Khurram Ali, M.D.,

11  on June 19, 2005, complaining of severe lower back pain.  AR 346.  Following her doctor's visit,

12  she underwent lumbar decompression and spinal fusion surgery under Dr. Philip Orisek, M.D. on

13  July 2, 2005.  AR 463–67.  Although the operation caused her immense post-operative pain,

14  requiring repeated doses of IV and oral narcotics, she generally tolerated the procedure well.  <u>Id.</u>

15  A post-operative bone biopsy revealed the presence of peripheral blood but no tumor.  AR 469.

16  On July 6, 2005, Dr. Khurram discharged plaintiff with a diagnosis of an L-3 comminuted

17  fracture, based on the aforementioned bone biopsy as well as a CT scan of her spine, as well as

18  asthma, alcoholic hepatitis, and alcohol withdrawal.  AR 346.

19       Subsequent to plaintiff's back surgery she visited the hospital a number of times for a

20  variety of issues seemingly unrelated to her back surgery.  On July 29, 2006, plaintiff was

21  admitted to Mercy General Hospital from the County Jail for acute alcohol intoxication.  AR 668.

22  Upon discharge, Dr. Kelly Sharrar, M.D., prescribed plaintiff Librium and Phenergan

23  suppositories for her nausea.  AR 669.  On October 6, 2006, plaintiff visited the emergency room

24  complaining of aches and pains in her elbows and fingers.  AR 318–23.  At that time she was

25  prescribed Depakote for her aches and pains and Albuterol for her asthma.  AR 323.  On March 1,

26  2007, plaintiff visited the emergency room after she suffered a injuries arising out of an incident

27  of domestic violence.  AR 309.  At the hospital Dr. Cindy Chang, M.D., gave plaintiff morphine,

28  Zofran, and Dilaudid for her pain.  <u>Id.</u>  Upon discharge Dr. Chang prescribed her Vicodin for her

1   pain and Phenergan for her nausea.  AR 309–10.  On May 16, 2007, plaintiff was taken to the

2   hospital by ambulance for asthma exacerbation and hyperventilation caused by a panic attack.

3   AR 274.  At the hospital Dr. John R. Loudermilk, M.D., gave plaintiff Albuterol via two hours of

4   continuous nebulizer, and Ativan for sedation.  Id.

5           On January 21, 2010, plaintiff saw Dr. Christopher O. Neubuerger, M.D., complaining of

6   severe lower back pain.  AR 629–32.  Plaintiff had been experiencing lower back pain since 2008

7   and since then had been to the emergency room for it a couple of times.  Id.  Dr. Neubuerger

8   notes in his medical report that plaintiff underwent surgery at Mercy San Juan Hospital in 2005,

9   after which plaintiff stated she saw improvement until 2008.  Id.  Dr. Neubuerger ordered plain

10  films of the thoracic and lumbar spine during plaintiff's visit, while noting that CT scans would

11  be useful.  Id.  On February 8, 2010, plaintiff returned to Dr. Neubuerger, reporting that her pains

12  and aches had worsened since her last visit.  AR 626–27.  Based on the new plain films Dr.

13  Neubuerger diagnosed plaintiff with a progression of her T9 compression fracture; a T10

14  compression fracture; a fracture of her left L5 pedicle screw; a history of vertebra plana

15  deformity; and a fracture at L3 with instrumentation L1 to L5.  Id.  Dr. Neubuerger's report also

16  states that an MRI of the thoracic spine was needed to ensure that plaintiff's fracture was not

17  pathologic based on some type of metastatic disease.  Id.

18          On April 20, 2010, plaintiff visited Dr. Neubuerger a third time, reporting that her back

19  pain had somewhat subsided since her last visit with the help of medication.  AR 622–24.  At that

20  time Dr. Neubuerger reviewed MRI results from March 2, 2010, that demonstrated significant

21  deformities and fractures.  Id.  Dr. Neubuerger stated that contrary to his orders a lumbar MRI

22  was not performed, and so he ordered one.  Id.  Nevertheless, he stated that while he did believe

23  plaintiff had osteoporosis, the fracture and activity in the spine was all old.  Id.

24          On August 4, 2010, a biopsy was performed on a lesion at L3.  AR 637–38.  This biopsy

25  revealed malignant neoplastic cells, which appeared to be a plasma cell tumor.  Id.  At this time

26  Dr. Mark D. Logsdon, M.D. at Mercy General Hospital noted that plaintiff "most likely" had

27  multiple myeloma.  AR 638.  The diagnosis of multiple myeloma was subsequently noted by Dr.

28  Neubuerger without comment in a report on August 10, 2010.  AR 621.

1    On August 5, 2010, Dr. Spears drafted progress notes commenting on plaintiff's multiple

2  myeloma diagnosis.  AR 714–15.  Dr. Spears' notes are somewhat unclear, however they seem to

3  indicate that at the time of plaintiff's 2005 surgery she had a plasma cell disorder that he

4  categorized as "simmering" multiple myeloma.  Id.  Dr. Spears' notes also seem to opine that

5  plaintiff should have been referred to medical oncology and received radiation therapy at the time

6  of her 2005 surgery.  Id.  At the ALJ's hearing plaintiff alleged that her doctors had told her at the

7  time of her diagnosis in 2010 that a mistake had been made after her surgery in 2005, and that

8  with further testing she would have been diagnosed with multiple myeloma at that time.  AR 66–

9  67.  In light of this admitted mistake, plaintiff argued that her onset date was actually September

10  30, 2005, despite her doctor's contrary diagnosis.  Id.  Dr. Spears' own residual functional

11  capacity assessment (RFCA), which does not seem to be limited to plaintiff's capacities before

12  the date last insured, states that plaintiff developed multiple myeloma in 2008.  AR 809.

13    3.    Analysis

14    Based on the facts set forth above, the court finds that the onset date of plaintiff's multiple

15  myeloma is not clearly established by the medical evidence.  Although the ALJ identifies facts to

16  support his conclusion regarding plaintiff's onset date, including that progress reports show

17  plaintiff's condition improved after her 2005 surgery and that she did not complain of back pain

18  during her July 2006, October 2006, March 2007, and May 2007 hospital visits, his reasoning

19  does not overcome the ambiguity created by Dr. Spears' own medical report.  AR 18–19, 274,

20  309, 318, 339, 387, 390, 391, 395, 402, 668; see also Quarles, 178 F. Supp. 2d at 1096–97.

21  Critically, Dr. Spears' August 5, 2010, note indicates that it had been error not to refer plaintiff to

22  radiation therapy after her 2005 surgery.  AR 714–15.  This note strongly suggests that plaintiff

23  developed multiple myeloma right under her doctors' noses in 2005.  Id.

24    The strongest piece of evidence in support of the Commissioner's position that a definite

25  onset date exists is Dr. Spears' RFCA, drafted on June 3, 2011, in which he states that the "onset

26  of [plaintiff's] diagnosis" was two (2) years ago.  AR 809.  In light of Dr. Spears' own notes

27  indicating that plaintiff's diagnosis was significantly delayed, however, the ALJ should not have

28  accepted the stated diagnosis date as an opinion regarding a definite onset date.  Moreover, it

8

1  seems that Dr. Spears was completely unaware that the timing of plaintiff's disability was an

2  issue.  <u>See</u> AR 808–12 (referring exclusively to plaintiff's present impairments, with no reference

3  to her capacities as of the date last insured).  Without any indication that Dr. Spears understood

4  the implications of the diagnosis onset date he reported, the RFCA is simply not sufficient to

5  resolve the ambiguities created by Dr. Spears' earlier report.  Accordingly, the court finds that the

6  ALJ committed legal error by failing to call a medical expert to testify regarding the onset date of

7  plaintiff's multiple myeloma.  In light of the ALJ's error, the court declines to reach plaintiff's

8  arguments regarding the ALJ's determinations on (1) whether plaintiff suffered from Listing

9  13.07 before the date last insured; (2) plaintiff's RFC; and (3) plaintiff's credibility.

10  B.  <u>Remand</u>

11      Plaintiff requests that the decision of the ALJ be vacated and that the court award plaintiff

12  benefits instead of remanding the matter.  The decision whether to remand for further proceedings

13  turns upon the likely utility of such proceedings.  <u>Barman v. Apfel</u>, 211 F.3d 1172, 1179 (9th Cir.

14  2000).  In this matter, the court concludes that outstanding issues remain that must be resolved

15  before a determination of disability can be made.  Pursuant to this remand, the ALJ shall call a

16  medical expert to testify to the onset date of plaintiff's multiple myeloma and re-evaluate

17  plaintiff's disability determination accordingly.

18                          CONCLUSION

19      In light of the foregoing, IT IS HEREBY ORDERED that:

20      1.  Plaintiff's motion for summary judgment (ECF No. 15) is granted in part;

21      2.  The Commissioner's cross-motion for summary judgment (ECF No. 20) is denied; and

22      3.  This matter is remanded for further proceedings consistent with this order.

23  DATED: December 9, 2014

24  _____

25  ALLISON CLAIRE
    UNITED STATES MAGISTRATE JUDGE

26

27

28

9